# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 21-844V
UNPUBLISHED

|  |  |
|---|---|
| PAUL LONGO,<br><br>                    Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: December 20, 2023<br><br>Special Processing Unit (SPU);<br>Ruling on the Record; Damages;<br>Influenza (Flu) Vaccine; Guillain-<br>Barré Syndrome (GBS) |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for petitioner.*

*Sarah Rifkin, U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION AWARDING DAMAGES[1]

On February 2, 2021, Paul Longo filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that he suffered from Guillain Barré syndrome ("GBS") caused by an influenza ("flu") vaccine administered on September 12, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"), and entitlement was found in the Petitioner's favor on February 9, 2022. The parties reached on impasse on the appropriate award for pain and suffering, and the matter was submitted for an SPU "Motions Day" hearing.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, I award **$160,000.00** in damages, representing compensation for actual pain and suffering, plus **$3,910.58** representing unreimbursed expenses.

## I.   Medical Records

Mr. Longo received a flu vaccine on September 12, 2019. Ex. 1 at 1. 8. Approximately fourteen days later, he visited his primary care physician, complaining of tingling and numbness in his extremities, which he had been experiencing for the past week. Ex. 2 at 5.

Petitioner's symptoms worsened, and he went to the emergency department on October 1, 2019. Ex. 4 at 233. An MRI on October 2, 2019, was unremarkable (Ex. 4 at 381), however a lumbar puncture performed that same day was indicative of GBS. Ex. 4 at 276. Petitioner underwent a five-day course of IVIG, and was discharged thereafter. *Id.* at 565-66. His pain was described as mild-to-moderate during this period (two-to-five out of ten). *Id.* at 612-14. Post-hospitalization, Petitioner required a rolling walker and described sharp, occasional pain in his feet. Ex. 3 at 67. His pain improved, and by October 31, 2019, he described it as two out of ten or denied any pain. *Id.* at 85.

Petitioner attended thirty-six physical therapy sessions between October 9, 2019, and February 17, 2020. Ex. 3 at 15-143, Ex. 5 at 6-107. At the time of his discharge, he reported some neuropathic pain in his lower extremities. *Id.* at 8. However, he also reported mild pain (zero-to-two out of ten) and was discharged from PT having met all his goals of care. Ex. 5 at 175, 6. At a follow-up on March 20, 2020, Petitioner reported bilateral foot numbness, mild weakness, but that he was "doing much better". Ex. 2 at 137.

By December 11, 2020, Petitioner continued to report some leg cramping and paresthesia, and continued discomfort. Ex. 7 at 3. He continued to report mild symptoms, such as tingling and numbness in his hands and feet, a year later on November 18, 2021. Ex. 15 at 33. However, by March 20, 2022, a repeat MRI showed no changes, and he was walking unassisted with a normal gait. Ex. 16 at 3.

## II.   Affidavit Evidence

Petitioner submitted three affidavits in support of his petition describing his course of treatment and how his GBS impacted his life. Ex. 9, 10, 18.

### III.    Damages

Petitioner filed a memorandum in support of his damages demand on July 8, 2022, seeking $180,000.00 for pain and suffering and $5,523.92 for unreimbursed expenses. Petitioner's Motion for Ruling on the Record ("Pet. Br."), ECF No. 28. Respondent reacted with his own brief on October 7, 2022, arguing that $90,000.00 was a more appropriate amount for pain and suffering, and allowing only $1,671.32 for unreimbursed expenses. Respondent's Response to Petitioner's Motion for Ruling on the Record with Regard to Damages ("Res. Br."), ECF No. 33. Petitioner filed a reply on October 24, 2022. Petitioner's Reply to Respondent's Response to Petitioner's Motion for Ruling on the Record with Regard to Damages ("Reply"), ECF No. 36. The parties stated in an email on December 15, 2023 that they agreed to an award of $3,910.58 for Petitioner's out-of-pocket expenses, and therefore that damages component is no longer in contention.

### IV.    Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment awarding such expenses which (i) resulted from the vaccine-related injury for which the petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (citing *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with that of my predecessor Chief Special Masters) adjudicating similar claims.[3] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated that the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum (between zero and the $250,000.00 cap), that practice was cast into doubt by the Court several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). The Court maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 589-90. Instead, pain and suffering should be assessed by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 593-95. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap. While *Graves* does not control the process used herein to calculate pain and suffering, it stands as wise counsel.

## V.   Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Mr. Longo was a competent adult with no impairments that would impact the awareness of his injury. Therefore, my analysis focuses primarily on the severity and duration of Petitioner's injury.

When performing this analysis, I review the record as a whole, including the medical records and affidavits filed, all assertions made by the parties in written documents, and the arguments presented during the Motions Day hearing. Petitioner cites to a number of damages decisions involving GBS injuries that resulted in

---

[3] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

$180,000.00 awards.[4] Pet. Br. at 13-14. Petitioner notes that Mr. Longo's treatment included a six-day course of hospitalization, a lumbar puncture, an MRI, and EKG, a CT scan, IVIG, and thirty-six physical and occupation therapy sessions. Pet. Br. at 9-12.

Respondent argues that the severity of Mr. Longo's GBS was less than what is evident in other comparable cases. Res. Br. at 16-19. Respondent notes that Petitioner's pain levels were relatively mild, he never attended any in-patient rehabilitation, and had a relatively short period of therapy. *Id.*

After reviewing the record in this case, the evidence best supports the conclusion that Mr. Longo experienced a mild-to-moderate case of GBS. He was fortunate to receive a relatively prompt diagnosis and appropriate treatment with IVIG. He was in the hospital for six days, and later did not require in-patient therapy. Petitioner underwent thirty-six physical therapy sessions over approximately four months, and also reported continued mild symptoms for at least two years.

Respondent's proposed award of $90,000.00 does not give sufficient credence to the seriousness of GBS as a general matter, or to the facts of this specific case. Petitioner has better substantiated his demand than Respondent. And the number he seeks reasonably balances the seriousness of GBS. However, I do agree with Respondent's argument that the present facts are not directly comparable to the damages determinations in the cases cited by Petitioner. In cases where $180,000.00 has been awarded for pain and suffering, the injured party experienced a specific, identifiable effect on their career, life, or daily living, which is harder to show here due to Mr. Longo's short course of treatment and lack of any long-term lasting effects. *See, e.g. Dillenbeck* 2019 WL 4072069, at *14; *Devlin*, 2020 WL 5512505 at *3; *Francesco*, 2020 WL 6705564 at *4; *W.B.*, 2020 WL 5509686 at *5.

Instead, Mr. Longo's situation is most similar to the petitioner in *Robinson v. Sec'y of Health & Hum. Servs.*, No. 18-0088V, 2020 WL 5820967 (Fed. Cl. Spec. Mstr. Aug. 27, 2020) (awarding $150,000.00 for pain and suffering). That individual also had a short hospital stay of six days, no in-patient therapy, and a relatively low number of physical therapy sessions. Further, the *Robinson* petitioner showed good recovery, with only mild sequelae three years after initial treatment. Mr. Longo underwent more physical therapy,

---

[4] In particular, Petitioner cited to *McCray v. Sec'y of Health & Hum. Servs.*, No. 19-0277V, 2021 WL 4618549 (Fed.  Cl. Spec. Mstr. Aug 31, 2021); *Fedewa v. Sec'y of Health & Hum. Servs.*, 17-1808V (Fed. Cl. Spec. Mstr. March 26, 2020); and *Johnson v. Sec'y of Health & Hum. Servs.*, No. 16-1356V, 2018 WL 5024012 (Fed. Cl. Spec. Mstr. July 20, 2018) (awarding $180,000.00 for pain and suffering). Pet. Br. at 13-14.

but he showed a good recovery, with complaints of only mild pain levels within approximately two months of the initial injury.

Balancing the severity of a GBS injury generally against the moderate disease course and treatment requirements evidenced on this record, and considering the arguments presented by both parties, a review of the cited cases, I find that **$160,000.00** in compensation for actual pain and suffering is reasonable and appropriate in this case.

### Conclusion

For all of the reasons discussed above, and based on consideration of the record as a whole, **I award Petitioner a lump sum payment of $163,910.58 (representing an award of $160,000.00 for past pain and suffering, and unreimbursed expenses of $3,910.58) in the form of a check payable to Petitioner.**

This amount represents compensation for all items of damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[5]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by each filing (either jointly or separately) a notice renouncing their right to seek review.